**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**MICHAEL J. HOLZ,**

    Plaintiff,

    v.                                        **Case No. 11-C-20**

**MICHAEL BAENEN,**

    Defendant.

---

## DECISION AND ORDER

---

Petitioner Michael J. Holz ("Holz"), a state prisoner in Green Bay Correctional Institution, filed a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1) Holz challenges his January 10, 2006, state court conviction pursuant to a guilty plea for second degree intentional homicide by use of a dangerous weapon and attempted first degree intentional homicide as an act of domestic abuse. He was sentenced to 45 years in prison and 20 years of extended supervision. The Wisconsin Court of Appeals affirmed his conviction and the denial of his motion for post-conviction relief in an unpublished disposition issued on August 11, 2009, *State v. Holz,* 321 Wis. 2d 476, 774 N.W.2d 475 (Wis. Ct. App. 2009) (Table); the Wisconsin Supreme Court denied review on January 12, 2010. (Ans. Exs. 5, 8.) (ECF Nos. 6-5, 6-8.)

### Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, a state

prisoner may obtain federal habeas relief based on a claim of legal error only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Ford v. Wilson,* 747 F.3d 944, 949 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1)). The Supreme Court has emphasized that this is a difficult standard to meet.

> '[C]learly established Federal law' for purposes of § 2254(d)(1) includes only "'the holdings, as opposed to the dicta, of this Court's decisions.'" *Howes v. Fields,* 132 S.Ct. 1181, 1187 (2012) (quoting *Williams v. Taylor,* 529 U.S. 362, 412 (2000)). And an "unreasonable application of" those holdings must be "'objectively unreasonable,'" not merely wrong; even "clear error" will not suffice. *Lockyer v. Andrade,* 538 U.S. 63, 75-76 (2003). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter,* 131 S.Ct. 770, 786-787 (2011).

*White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). (Parallel citations omitted).

In his petition, Holz focused on the application of law to the facts. In his brief, Holz revisits the factual findings made by the state court of appeals, although he does not address the standard of review for such findings and his recitation of the facts does not reflect the court of appeals' findings. Because Holz has not argued that the court of appeals made an unreasonable determination of the facts, those factual findings are presumed to be correct, *see* 28 U.S.C. § 2254(e)(1), and are the basis

upon which the Court considers whether the law as articulated by the Supreme Court was properly applied.

### State Appeals Court's Factual Findings

On October 20, 2004, Holz stabbed Nathan Neibert ("Neibert") who was in bed with Holz's ex-girlfriend, Faith Dempsey ("Dempsey"). After stabbing Neibert, Holz left the room and Dempsey dialed 911. Holz returned and stabbed Dempsey as she was on the phone. Neibert died from a stab wound to his chest, but Dempsey survived a stab wound to her back. Dempsey's 911 call was recorded. The recording captures the sounds of Neibert dying, as well as incriminating statements attributable to Holz. As Holz stabbed Dempsey, he can be heard saying "you die too" or "you deserve to die." Holz's other recorded statements include "you goddamn cheat," "her lover got stabbed by his girl's boyfriend," and "you both don't deserve to live."

Holz's trial counsel, Attorney Scott Wales ("Wales"),[1] did not initially realize that Holz's statements had been captured on the recording. Wales made tape recordings of the call and provided one to the court, moving to exclude the recording because it was unfairly prejudicial due to Neibert's dying sounds. He also sent a letter to the trial court requesting that it listen to the recording. Wales sent a tape to a court reporting service to have a transcript made, and the resulting transcript contained only

---

[1] Wales and his law partner, Marty Stein ("Stein"), worked closely together on Holz's case. Under Wisconsin law a criminal defendant wishing to assert his trial counsel was ineffective must file a post-conviction motion in the trial court asking for an evidentiary hearing to develop the factual basis for the claim by soliciting evidence from the allegedly ineffective attorney. *State v. Machner*, 92 Wis.2d 797, 804, 285 N.W.2d 905, 908 (Wis. 1979). Holz did not raise any post-conviction issue regarding Stein's representation.

one statement attributed to Holz: "her lover got stabbed by his girl's boyfriend." The weekend before trial, Wales listened to the compact disc (CD) version and heard all of Holz's incriminating statements.

On the morning of trial, Wales sought to have the transcript admitted in place of the recording. The court pointed out that it had listened to the recording and thought it heard Holz "blurt something out." The State asserted that Holz could be heard saying "you die too" on the recording. The court denied the motion to admit the transcript in place of the recording, concluding that the recording's probative value outweighed any potential for unfair prejudice.

Later that day, Wales advised Holz to accept a plea offer in which the State agreed to amend the first degree intentional homicide charge to second degree intentional homicide. Holz accepted the plea offer and was convicted upon his guilty pleas of second degree intentional homicide using a dangerous weapon and attempted first degree intentional homicide using a dangerous weapon and as an act of domestic abuse.[2]

Holz sought postconviction relief, claiming that his trial counsel was ineffective. The theme of Holz's motion was that Wales was unprepared for trial and sought to cover up that fact by seeking admission of the transcript in place of the recording and then advising Holz to accept a plea offer. Holz asserted that Wales' conduct was not only deficient and prejudicial, but also demonstrated a conflict of

---

[2] Holz also withdrew his insanity plea.

interest.

At the *Machner* hearing,[3] Wales testified that he made cassette tape copies of a CD version of the recording. He also testified that, in hindsight, the taped copies were not as clear as the CD version. Wales testified that he was not attempting to deceive the court by seeking admission of the transcript; that he did not advise Holz to plead guilty to conceal any lack of preparation; and that he was not worried about losing business or being reported to the Office of Lawyer Regulation. He also testified that had he been attempting to conceal anything, he would not have referred Holz to postconviction counsel he perceived to be one of the best in the business. The trial court denied Holz's postconviction motion, concluding that Wales was not representing a conflicting interest and was not otherwise ineffective.[4]

## Analysis

Holz contends that the Wisconsin Court of Appeals erred in failing to apply the *Cuyler v. Sullivan,* 446 U.S. 335, 349-50 (1980),[5] standard to his ineffective assistance of counsel claim rather than the more familiar *Strickland v. Washington*, 466 U.S. 668, 693 (1984), standard. While both standards require that counsel's performance fall below an objectively reasonable standard, the *Sullivan* standard does

---

[3] The *Machner* hearing was held on February 29, March 18, and March 19, 2008. (*See* Ans. Exs. 11-13.) (ECF Nos. 7-11 through 7-13.)

[4] The trial court issued an oral ruling on April 28, 2008. (Ans. Ex. 14.) (ECF No. 7-14.)

[5] The Court has adopted the Supreme Court's short reference to *Cuyler v. Sullivan,* as *Sullivan* in *Mickens v. Taylor,* 535 U.S. 162, 171 (2002).

not require proof of prejudice; i.e., that the outcome of the proceedings would have been different, and the *Strickland* standard does. The Respondent asserts that the decision of the Wisconsin Court of Appeals rejecting Holz's claim is not contrary to or an unreasonable application of *Sullivan*, and that Holz does not cite any Supreme Court decision which applies the actual conflict of interest to a situation not involving serial or multiple representations by an attorney.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland,* 466 U.S. at 684. The purpose of the right is to ensure a fair trial, and the benchmark for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. To establish ineffective assistance of counsel, a defendant must show that (1) his trial attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Id.* at 688, 694. If a defendant is unable to make a sufficient showing of one of the *Strickland* prongs, the Court need not consider the other. *See id.* at 697.

The Sixth Amendment right to effective assistance of counsel encompasses "a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271 (1981). To establish a violation of the Sixth Amendment due to that type of a conflict, a defendant who failed to raise the objection at trial must demonstrate that trial counsel had an actual conflict of interest and that the conflict

adversely affected counsel's performance. *Sullivan,* 446 U.S. at 348; *see also Mickens,* 535 U.S. at 171. An actual conflict exists when an attorney actively represents incompatible interests; it is more than a "mere theoretical division of loyalties." *Id.* In other words, a potential conflict of interest, no matter how it is addressed by the trial judge, is insufficient to warrant relief.

*Conflict of Interest*

With this background in mind the Court considers the conflict of interest issue raised by Holz. In his opening brief, Holz contends that the Wisconsin Court of Appeals' decision was an unreasonable application of, and contrary to, *Sullivan* because it focused almost entirely on Wales' subjective motivation rather than the objective facts of his conduct. Holz contends that the decision ignores Wales' admission that he put his interests above those of his client and omits any discussion of the legal and ethical rules Wales violated by his lack of preparation, his failure to move for an adjournment, and his sponsoring of a materially inaccurate document.

Holz's brief highlights the facts favorable to the existence of a conflict of interest. However, it does not reflect that the Wisconsin Court of Appeals found Holz had not established by clear and convincing evidence that Wales had an actual conflict of interest, relying on the factual findings of Brown County Circuit Court Judge Kendall M. Kelley, who presided over the entire case from pretrial proceedings through the extended post-conviction proceedings and issued oral decisions on the motions to withdraw the plea and Holz's ineffective assistance of counsel claim. The

court of appeals found that with respect to seeking admission of the 911 transcript, counsel was not trying to protect himself or deceive the court, rather he was acting in Holz's interests by trying to present the 911 call in a less emotionally charged manner.  In addition, the court concluded that Wales' advice that Holz accept the plea was not driven by a conflict of interest.  Specifically, the court held that "counsel was representing Holz's interests, not his own, when seeking admission of the transcript in place of the recording and when advising Holz to plead guilty to second degree homicide rather than risk a first degree homicide conviction."  (Ans. Ex. 5, at ¶13.)

The Wisconsin Court of Appeals analyzed the case under *State v. Love*, 227 Wis. 2d 60, 68-71, 594 N.W. 2d 806, 810-12 (Wis. 1999), which incorporates the *Sullivan* standards.  The court found that Wales did not have an actual conflict of interest which adversely affected his performance.  Additionally, the Supreme Court has not applied *Sullivan* to any cases involving the type of conflict present in the instant case.  *See Mickens,* 535 U.S. at 174-75.

Holz has not established that the Wisconsin appellate court's analysis amounts to the erroneous application of a principle of constitutional law "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter,* 131 S.Ct. 770, 786-87 (2011).  Therefore, this Court must uphold the Wisconsin appellate court's ruling.  Even if Holz had prevailed on his contentions of conflict of interest, Supreme Court precedent would still require that he establish prejudice.

Holz cites a number of appellate decisions arising from § 2255 review. (Mem., Support Pet. 12, 15 (citing *Hall v. United States,* 371 F.3d 969, 973 (7th Cir. 2004)[6]; *Lipson v. United States,* 233 F.3d 942, 946 (7th Cir. 2000); *United States v. Morris*, 259 F.3d 894, 899 (7th Cir. 2001); *United States v. Jones*, 900 F.2d 512, 519 (2d Cir. 1990); *United States v. Moree,* 220 F.3d 65, 69 (2d Cir. 2000).) (ECF No. 15.) Those cases do not involve the doubly deferential review afforded to prior state court postconviction determinations. *See Harrington,* 131 S. Ct. at 785. Furthermore, *Hall, Lipson* and *Morris* resulted in remands for hearings on potential conflicts of interest. *Jones* and *Moree* affirmed findings of no conflict of interest.

*Rubin v. Gee,* 292 F.3d 396, 405 (4th Cir. 2002), also cited by Holz, affirmed a district court's grant of a § 2254 petition for a writ of habeas corpus, concluding that the state court's decision not to order a new trial for the petitioner, Lisa Joyce Rubin ("Rubin"), was an objectively unreasonable application of clearly established federal law regarding her right to conflict-free representation.

*Rubin* involved two attorneys who, after Rubin fatally shot her husband eight times, "schooled [Rubin] in the tactics of evasion in order to guarantee their own fee. Then, to avoid criminal indictment and keep their conduct from coming to light, took cover as part of the defense team." *Id.* at 398. "While the prosecution harped at trial on Rubin's actions immediately following the crime, the attorneys could not be called as fact witnesses and their role in directing Rubin's actions was never explained." *Id.*

---

[6] Holz cited volume 341 of F.3d. The Court has corrected the typographical error.

As the court explained:

> Rubin thus had a strong interest in having [the two attorneys] help the jury understand that she acted on the advice of her own lawyers following the homicide. The very attorneys who were supposed to function in a representative capacity had become critical fact witnesses regarding the crime scene and Rubin's conduct. Testimony from either of the attorneys at trial might have helped explain Rubin's behavior to the jury.
>
> Testimony, however, was apparently the last thing [the two attorneys] had in mind. They had a powerful conflicting interest in shielding themselves from testifying to conceal their role in the events following the homicide. [The two attorneys] did not—indeed could not—fulfill their obligations to vigorously protect their client's interests.

*Id.* at 403. The adverse effect on Rubin's trial was "self-evident." *Id.* at 398. *Rubin* arose from egregious facts not comparable to those of this case, and it is not a decision of the Supreme Court.

*Withdrawal of Plea*

Holz contends that by focusing on his failure to testify at the post-conviction hearing and by failing to undertake any meaningful review of the objective facts, the Wisconsin Court of Appeals' decision finding of no prejudice was an unreasonable application of *Strickland* and contrary to *Hill v. Lockhart*, 474 U.S. 52 (1985). Holz asserts that the analysis by the Wisconsin Court of Appeals in this action is defective, as it was in *Toliver v. McCaughtry,* 539 F.3d 766 (7th Cir. 2008).[7]

---

[7] *Toliver*, 539 F.3d at 775-76, involved counsel's failure to call one witness and to interview

*Hill*, 474 U.S. at 58-59, held that that the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. Under the first requirement of the *Strickland* test, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *See id.* at 56-57 (citations omitted). "The second, or 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *see also Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

This is an objective analysis that requires the Court to examine what a reasonable person would do. *Warren v. Baenen,* 712 F.3d 1090, 1097 (7th Cir. 2013). "[A] mere allegation by the [petitioner] that he would have insisted on going to trial is insufficient to establish prejudice." *Morales v. Boatwright,* 580 F.3d 653, 663 (7th

---

and call another witness, who would have provided "unique" information at trial, available from no other witness, that was corroborative of the defendant's claim that he had not urged his brother to kill the murder victim, but had actually attempted to dissuade him from doing so. The Seventh Circuit Court of Appeals found that the decision of the state court of appeals regarding prejudice on a *Strickland* claim fell outside the bounds of reasonableness, and it remanded the case to the district court for further proceedings, which were to include addressing the first part of the *Strickland* test — attorney competence — which had not been resolved by the state courts. *Id.* at 782.

Cir. 2009.) (Citation omitted.) Rather, the petitioner "must go further and present objective evidence that a reasonable probability exists that he would have taken that step." *Id.*

Holz's postconviction counsel asserted that trial counsel's performance was deficient in the following respects:

- the handling of the 911 call;[8]

- the failure to revisit with Holz his right to testify and the potential importance of that testimony;

- the failure to prepare a workable defense of homicide by negligent use of a weapon, rather than relying on the "battered person syndrome," or inadmissible "other acts" and character evidence, including the planned use of Dempsey's alleged "infidelities";

- the failure to have any opening statement planned or any admissible evidence available in support of any viable theory of defense;

- the failure to seek a continuance to protect Holz's right to the effective assistance of counsel, and the related failure to consult with the defense forensic psychological expert, Dr. David Shapiro, with respect to how Holz's statements on the 911 tape impacted Shapiro's findings with respect to Holz's plea of not guilty by reason of mental disease or defect (NGI). Holz relied on Shapiro's testimony that had Wales consulted with him he would have told Wales, and would have testified, that the statements were consistent with Holz's dissociative disorder and would support the NGI defense.

(*See* Ans., Ex. 2.) (ECF No. 6-2.) The Wisconsin Court of Appeals did not address deficient performance, because it found that Holz could not prove prejudice. (*Id.* at Ex. 5 at ¶15.)

---

[8] On appeal the Respondent conceded that Wales' handling of the 911 call constituted deficient performance (Ans., Ex. 3 at 16.) (ECF No. 6-3.)

In order to show prejudice, a defendant must demonstrate that he would likely not have pled guilty without receiving bad advice from his lawyer. The Wisconsin Court of Appeals stated that Holz's prejudice argument was as follows: had reasonably competent counsel been prepared to present workable defense, revisited whether Holz should testify, and been better prepared to confront the 911 call, he would not have plead guilty.

The court of appeals rejected Holz's argument finding:

> the overwhelming evidence of Holz's guilt undermines his assertion that he would not have pled guilty absent counsel's alleged deficiencies. It is undisputed that Holz stabbed Neibert and Dempsey and caused Neibert's death. Faith Dempsey was a living witness to the attack. Holz's intent to kill is established not only by his actions, but also by his statements on the 911 recording. Holz does not dispute that his incriminating statements, such as 'you both deserve to die,' are on the recording, nor does he suggest the recording could have been suppressed.

(*Id*. at ¶16.)

Against this evidence, the court of appeals observed that Holz did not testify at his *Machner* hearing and therefore had provided no evidence directly addressing the dispositive issue of whether he would have pled guilty absent counsel's errors. The court also noted that Holz's claimed alternative defenses were that he could have been found guilty on a lesser charge of homicide by negligent use of a weapon and that he could have asserted a heat of passion defense, that Holz relied on the testimony of a

law professor at the *Machner* hearing that these potential defenses were viable, but that Holz had not provided a clear picture of those defenses.

Stating that it was applying an objective standard, the state appeals court also held that Holz's failure to testify at the *Machner* hearing was critical because his potential alternative defenses would have been dependent on his own trial testimony about his state of mind and intentions. The court noted Holz's assertion that Wales' failure to revisit whether Holz should testify was prejudicial. However, it relied upon Wales' testimony at the *Machner* hearing which suggested that Holz did not want to testify. Holz also had limited recollection of the attack.

In addition, the court observed that Holz did not point to any evidence indicating that he would have been willing to testify had counsel acted differently, and that there was no evidence that Holz had any testimony to offer in support of his claimed alternative defenses. Without evidence that Holz would have been willing and able to testify in support of his defenses, the appeals court determined that there was no basis for concluding a reasonable person in Holz's position would not have pled guilty if Wales had revisited the issue of whether Holz should testify.

The appeals court also determined that Holz failed to show he would have gone to trial had counsel discovered his statements on the 911 recording earlier or sought a continuance. While Holz suggested that Wales should have sought more time to better prepare to confront the recording, he did not offer any tangible explanation of how that would have made any difference. In addition, the court noted

that Holz was also pursuing a NGI plea and had suggested that his statements on the 911 recording could have been explained in the NGI trial phase. The appeals court concluded that given the overwhelming evidence of his guilt, Holz failed to establish he would have done anything other than what he did — accept the State's plea offer and avoid a first degree intentional homicide conviction.

In its decision the Wisconsin Court of Appeals considered Holz's contentions regarding the prejudice he claimed to have sustained. The court found that Holz's trial testimony would have been critical to those defenses and that absent evidence Holz would have been willing and able to testify, there was no basis for concluding that a reasonable person in Holz's position would not have pled guilty and gone to trial. Before this Court, Holz ignores that portion of the appeals court's decision. Holz has not demonstrated that the appeals court was acting unreasonably when it concluded that because there was no indication he had both the willingness to testify at trial and some evidence to provide, he was unable to establish that he was prejudiced by trial counsel's deficiencies.

Again, it must be emphasized that upon review, the last decision of a state court is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington,* 131 S. Ct. at 785. "The question is not whether [the Court believes] the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable — a substantially higher threshold. And, because the *Strickland*

standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (internal quotations and citations omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington,* 131 S. Ct. at 786. Under this standard, the Court cannot conclude that the Wisconsin Court of Appeals' determination that Holz failed to show prejudice because he did not establish how the claimed deficiencies of trial counsel affected his decision to plead guilty is unreasonable. Therefore, Holz's petition for a writ of habeas corpus must be denied.

*Certificate of Appealability*

When the Court enters a final judgment against the petitioner, it must also issue or deny a certificate of appealability. Rule 11(a), Rules Governing Section 2254 Cases. Holz's petition does not evince a "substantial showing" that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 327 (2003). Accordingly, the Court will not issue a certificate of appealability.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Holz's petition for a writ of habeas corpus (ECF No. 1) is **DENIED**;

The Court **DECLINES TO ISSUE** a certificate of appealability; and

The Clerk of Court is **DIRECTED TO ENTER** judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of August, 2014.

           **BY THE COURT:**

           _____
           **HON. RUDOLPH T. RANDA**
           **U.S. District Judge**